**[Cite as *In re A.W.*, 2026-Ohio-2996.]**

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
MUSKINGUM COUNTY, OHIO

| IN THE MATTER OF: A.W. | Case No. CT2026-0038 |
| --- | --- |
| | Opinion And Judgment Entry |
| | Appeal from the Muskingum County Court of Common Pleas, Juvenile Division, Case No. 22630032 |
| | Judgment:  Affirmed |
| | Date of Judgment Entry: July 31, 2026 |

**BEFORE:** Andrew J. King; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** RONALD L. WELCH, Muskingum County Prosecuting Attorney by JACOB J. WINSLOW, for Appellee; RICHARD D. HIXSON, for Mother/Appellant, and D. SCOTT RANKIN, for Father; and KEVIN VAN HORN, Guardian ad Litem.

*Montgomery, J.*

{¶1}  Mother-Appellant, Stephanie Tilley, appeals from the judgment of the Muskingum County Court of Common Pleas, Juvenile Division, finding minor child, A.W., dependent and minor child, N.T., abused, neglected, and dependent.  For the reasons below, we AFFIRM.

## STATEMENT OF FACTS

{¶2}    The subject children involved in this appeal are A.W. (D.O.B. 05-02-2016) and N.T. (D.O.B. 04-16-2019). The Mother of both minor children is Stephanie Tilley (hereinafter "Mother" or "Appellant"). The Father of A.W. is Brad Wilson (hereinafter "Father"). The Father of N.T. is unknown. On or about February 23, 2026, Muskingum County Adult and Child Protective Services (hereinafter "the agency") filed a complaint for temporary custody over A.W. and N.T. Said complaint alleged that A.W. was a dependent child under R.C. 2151.04(C) and that N.T. was an abused child under R.C. 2151.031(C), a neglected child under R.C. 2151.03(A)(2), and a dependent child under R.C. 2151.04(C).

{¶3}    On March 18, 2026, the trial court held a dispositional and adjudicatory hearing on said complaint. At the time of the hearing, Father was the residential parent of A.W., and he admitted A.W. was a dependent child as alleged. Mother contested the allegations. The trial court heard testimony from the following individuals: Tricia Hayhurst, Caseworker Levi Hayhurst (hereinafter "Caseworker Hayhurst"), Zanesville Police Officer Jeffery Traub (hereinafter "Officer Traub"), Trooper Jacob Mellinger (hereinafter "Trooper Mellinger") of the Ohio State Highway Patrol, caseworker Brianna Hickenbottom (hereinafter "Caseworker Hickenbottom"), Deputy Matthew Kallgren from Muskingum County Sheriff's Office, and Sergeant Brice Sweeney from Muskingum County Sheriff's Office.

{¶4}    The testimony demonstrates that agency concerns began after an incident involving the mother and the children on August 14, 2025. Tricia Hayhurst is employed as the Mayor's Court clerk for the Village of South Zanesville. On August 14, 2025, Ms. Hayhurst reported that Mother and the children entered her office, and Mother requested that

a police officer speak to her children regarding their bad behavior. A.W. appeared disheveled, with redness on her face and a stretched shirt. Mother stated that A.W. kicked Mother, that A.W. and N.T. were fighting in the back seat of Mother's vehicle, and that Mother had to break up the fight between them. Ms. Hayhurst testified Mother kept saying over and over that the police were going to arrest A.W. because "that's what they do to bad kids. They arrest them." Tr., p. 7. Mother repeatedly told A.W. she would be arrested and kept there, and asked an officer to in fact arrest A.W. Mother told N.T. (a child with special needs) he would never see A.W. again, causing N.T. to be extremely upset. Mother and the children ultimately left the station together, and upon leaving, A.W. stated "looks like I'm gonna get hit again." No criminal charges were filed or arrests made as a result of the incident, but thereafter, the agency got involved. *Id.* at 12.

{¶5}   The next day, August 15, 2025, Caseworker Hayhurst, an ongoing caseworker with the agency, became involved with the case. *Id.* at 14. He reported he was asked to go with another caseworker on an out-of-home safety plan removal from Mother. Caseworker Hayhurst went to Mother's home and investigated it. He observed medication bottles in reach of the minor children, "dishes everywhere" including on the floor, what appeared to be a poop stain on a pillow, "clothes all over the floor" in N.T.'s room, and rodent cages in the home. Caseworker Hayhurst did not observe loose medication on the floor and did not know if the medication bottles contained any pills or whether N.T. had the ability to open the bottles. Caseworker Hayhurst found the home unsafe for the children. Mother agreed to the "safety plan" to remove the children out of the home and placed in temporary care. Shortly thereafter, due to concerns with Mother's care, Father of A.W. was granted temporary custody of A.W. and named the residential parent.

{¶6}  On October 30, 2025, Mother was involved in a "hit skip" accident with another vehicle on Maple Ave., in Zanesville, Ohio. The individual in the hit vehicle captured Mother's vehicle on video, and Mother was clearly identified as the driver.  Mother fled the scene.  Officer Traub testified regarding his investigation of the hit skip.  After attempts to contact Mother, she eventually contacted him on November 3, 2025.  Mother voluntarily reported to Officer Traub she took Xanax on the day of the accident and did not remember getting into the accident.[1]  Mother was criminally charged with a marked lanes violation and hit skip. The evidence is unclear if any other persons were in the car, namely N.T., with Mother at the time. However, approximately 16 minutes later, another accident was reported and investigated involving Mother, and N.T. was in the backseat at the time of this accident.

{¶7}  Trooper Mellinger testified that, later on October 30, 2025, just sixteen (16) minutes after the hit skip in Zanesville, Mother drove left of center on State Route 40 striking another vehicle head on.  Trooper Mellinger testified that the accident was "significant enough that there were parts and pieces of cars flying on the highway," specifically the driver's side door panel of Mother's minivan.  Tr., p. 52.  N.T. was in the vehicle with Mother at the time of this accident.  At the scene, Mother appeared "slow and lethargic," and based on Trooper Mellinger's training and experience, he stated Mother's demeanor indicated impairment.  Mother refused a sobriety test (which she has a right to do) and Trooper Mellinger did not perform any other tests.  Trooper Mellinger also found a half-empty bottle of Smirnoff Vodka in the back seat of the vehicle.  Trooper Mellinger testified that one witness at the scene reported seeing Mother throw a bottle in the back of the vehicle after the accident. Two to three witnesses reported that after the accident, N.T. got out of the car, ran across the

---

[1] Mother reported that she has a prescription for Xanax.

highway by himself, got into the vehicle that was struck and told the occupant(s) that "mom fell asleep," "she does that all the time," and he was scared.

{¶8} Trooper Mellinger testified that Mother and N.T. were transported by ambulance to the hospital. He went to interview Mother at the Emergency Room and found her sleeping in the room. Trooper Mellinger woke up Mother, and he reported that her speech was slow and lethargic, she had bloodshot eyes, and her breath smelled of alcohol. Mother first claimed the other car went left of center but later changed her story and admitted to consuming three (3) to four (4) ounces of boxed wine. Mother further stated to Trooper Mellinger that she "wished she had a Xanax." Mother's version of events was clearly inconsistent with the witnesses and crash victims at the scene. Mother was criminally charged with OVI, left of center, and Child Endangerment. The charges remained pending at the time of the juvenile hearing. The trial court determined, based on the proximity of both time and distance of the two accidents, that the minor child N.T. was likely in the vehicle during both of Mother's auto accidents caused by Mother's impairment.

{¶9} Caseworker Hickenbottom testified she became involved with the children in November of 2025, due to concerns regarding Mother after the above-described car accidents. At that time, A.W. was in Father's temporary custody and Father was the residential parent of A.W. Due to substance abuse concerns, Father was given a drug test, and he tested positive for cocaine. Father agreed to a safety plan wherein A.W. was placed outside of his home – a kinship placement - and neither parent was to have unsupervised visits. At some point and for unknown reasons, a prior custody arrangement resumed, which essentially split parenting time for A.W. equally between Mother and Father. Mother was asked to sign a safety plan keeping A.W. in the relative/kinship placement arranged by the agency and Father, but

Mother refused to sign. Thereafter, Mother attempted to remove A.W. from school and his kinship placement.

{¶10} Due to Mother's actions regarding A.W., Caseworker Hickenbottom testified the agency continued to have concerns with Mother, including her drinking and driving, substance/alcohol use and/or abuse, mental health, her refusal to sign a safety plan for A.W., and her insistence that A.W. be returned to her. These concerns prompted the agency to file the instant temporary custody action to remove both children from their respective parents' homes. At the hearing, A.W.'s Father was represented by counsel and voluntarily admitted that A.W. is dependent, as alleged in the agency's Complaint. After considering all the evidence, the trial court determined that A.W. was a dependent child, and N.T. was an abused child, a neglected child, and a dependent child. Mother filed the instant appeal asserting two assignments of error.

## ASSIGNMENTS OF ERROR

{¶11} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ADJUDICATED A.W. DEPENDENT UNDER R.C. 2151.04(C) AND N.T. ABUSED, NEGLECTED, AND DEPENDENT UNDER R.C. 2151.031(C), 2151.03(A)(2), AND R.C. 2151.04(C), RESPECTIVELY, AS THE SAME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE."

{¶12} "II. TRIAL COUNSEL WAS INEFFECTIVE WHEN IT FAILED TO OBJECT TO INADMISSIBLE HEARSAY AND THE ADMISSION OF THE SAME PREJUDICED MOTHER."

## LAW AND ANALYSIS

### A. *Abuse, Neglect, and Dependency Statutes*

{¶13} Under R.C. 2151.031(C), an "abused child" includes a child who "[i]s endangered as defined in [R.C. 2919.22], except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child[.]" A

child is endangered under R.C. 2919.22(A) if the child's parent creates "a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." A child is endangered under R.C. 2919.22(C) if a person operates a vehicle in violation of division (A) of section 4511.19 of the Revised Code [OVI] when one or more children under eighteen years of age are in the vehicle.

{¶14} Pursuant to R.C. 2151.03(A)(2), a "neglected" child includes a child "[w]ho lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian[.]"

{¶15} Regarding dependency, R.C. 2151.04(C) states that a dependent child includes a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" The determination that a child is dependent requires no showing of fault on the parent's part. *In re J.Q.*, 2020-Ohio-4507 (12th Dist.); *In re R.C.,* 2023-Ohio-146, ¶ 19 (5th Dist.) (A finding of dependency does not require parental fault; the focus is on the child's condition and environment). The focus is solely on the child's condition or environment, and whether the child is without adequate care or support. *Id.*; *In re C.W.*, 2010-Ohio-4624, ¶ 30 (5th Dist.). However, a parent's conduct may be considered insofar as it forms the child's environment. *In re D.M.,* 2014-Ohio-2160 (6th Dist.), citing, *In re Alexander* C., 2005-Ohio-6134 (6th Dist.). Additionally, R.C. 2151.04(D) states that a dependent child includes a child to whom both the following apply:

(1)    The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

(2)     Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

*In re A.K.*, 2025-Ohio-2935, ¶ 10 (4th Dist.).

**{¶16}** The statutorily permissible dispositional alternatives in dependency, neglect, or abuse cases are enumerated in R.C. 2151.353(A). R.C. 2151.353(A)(2) provides that, if a child is adjudicated an abused, neglected, *or* dependent child, the court may "commit the child to the temporary custody of any of the following: (a) A public children services agency. Here, the trial court awarded the agency temporary custody of A.W. and N.T.

### B. Standard of Review

**{¶17}** R.C. 2151.35(A)(1) states: "[i]f the court at the adjudicatory hearing finds from clear and convincing evidence that the child is an abused, neglected, or dependent child, the court shall proceed . . . to hold a dispositional hearing and hear the evidence as to the proper disposition to be made under [R.C. 2151.353]." "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus; *In re M.E.*, 2017-Ohio-2841, ¶ 17 (5th Dist.).

Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite

degree of proof. (citation omitted).  If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 10 Ohio B. 408, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997-Ohio-260, 674 N.E.2d 1159.

*Id.*

{¶18}  Thus, in reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *C.W.*, ¶ 18 (5th Dist.) (reviewing the trial court's findings of neglect and dependency), citing *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).  An appellate court must not substitute its judgment for that of the trial court when there exists some competent and credible evidence supporting the findings of fact and conclusion of law.  *C.W.*, ¶ 19.

### C. Analysis

{¶19}  In her first assignment of error, Mother argues the juvenile court erred in finding that A.W. is dependent, and that N.T. is abused, neglected, and dependent, and that said findings are against the manifest weight of the evidence. We disagree.

{¶20} As an initial matter, Mother contests the trial court's "apparent reliance" on statements made by non-testifying witnesses to support its findings and conclusions. Mother points out the following alleged "hearsay" testimony by Trooper Mellinger. First, he testified that "one of the witnesses on scene stated that after the crash occurred, the child ran out of the vehicle, over to their vehicle, and hopped in their truck with them. He said that his - 'Mom had fallen asleep,' and that, 'She does that all of the time,' and that he was scared." Second, when asked if anyone else had noticed a bottle of vodka in Mother's vehicle, Trooper Mellinger testified that "There was a witness on scene that described - after the crash, said she saw [Mother] throwing bottles into the rear of the vehicle." Mother argues that "both of these statements appear to have been taken by the trial court to prove the truth of the matter asserted by the statement, as the trial court explicitly relied on each statement as a factual finding in adjudicating the Minor Children." Appellant's Brief at pp. 18-19.

{¶21} Aside from the fact that these statements may well fall within an exception to the hearsay rule given the fact that these statements were made to a police officer investigating the scene of a car accident and shortly after said accident, we disagree that the trial court heavily relied on these statements in making its determinations. There is a presumption that "a trial court only considered relevant and admissible evidence in a bench trial." *State v. Crawford,* 2013-Ohio-1659, ¶ 61 (8th Dist.). Indeed, "[w]hen the trial court is the trier of fact, the judge is presumed capable of disregarding improper hearsay evidence." *Id.,* citing, *In re Sims,* 13 Ohio App.3d 37, 41 (12th Dist. 1983). More importantly, the record contains significant evidence to support the trial court's dispositions without considering or relying on these alleged hearsay statements. Thus, our conclusions herein do not rely on these alleged hearsay statements.

**{¶22}** As stated, dependency focuses on the child's condition or environment, and whether the child is without adequate care or support. Here, both the condition of the home on August 15, 2025, and the two car accidents that occurred on October 30, 2025, support the finding and conclusion that N.T. is a dependent child.

**{¶23}** Regarding the initial visit to the home, the day after the incident where Mother took her children to the police department, Caseworker Hayhurst visited and evaluated its condition. Caseworker Hayhurst testified that there were "a lot of things that were concerning about the home," as described above, that led him to believe that it was not a safe home for the minor children. Tr. p. 15. The concerns were severe enough that a safety plan was created to remove the children from the home on a voluntary basis. *Id.* Mother initially agreed that her home was not in a proper condition for N.T. and she signed the voluntary safety plan. This <u>alone</u> is sufficient to support the trial court's finding that N.T. is a dependent child.

**{¶24}** A couple of months later, on October 30, 2025, Mother was involved in two separate car accidents within a 16-minute time span, and she was criminally charged for both. Officer Traub investigated the first accident that occurred in Zanesville, Ohio - a "hit skip" or hit and run. Mother reported to Officer Traub that she took Xanax that day, before driving, and did not even remember the accident. The second accident occurred about 16 minutes later and Trooper Mellinger responded to the scene. At the scene, Trooper Mellinger discovered a half empty bottle of Vodka in the back of Mother's vehicle. There is no question that N.T. was in the vehicle at the time of the second accident. Trooper Mellinger described Mother at the scene as "slow and lethargic." Mother admitted to Trooper Mellinger to

drinking earlier that day. Based on the timing and locations of the accidents alone, it is more than plausible that N.T. was in the car at the time of both accidents.

{¶25} Considering these accidents only insofar as they related to N.T.'s environment, Mother created threats to N.T.'s safety and overall well-being. N.T. was subjected to unsafe driving as well as unsuitable supervision due to Xanax and alcohol use. Thus, competent, credible evidence exists to support the trial court's dependency determination for N.T.

{¶26} Regarding A.W., Father was the residential parent at the time, and Father voluntarily agreed at the hearing that A.W. is dependent. In addition, the very reasons that N.T. is dependent apply equally to A.W. Mother's conduct impacts both A.W.'s and N.T.'s safety, well-being, and daily living environment. The same threats to A.W.'s safety would be present if she were placed in the environment with Mother. A child need not first be placed in a dangerous condition or environment to prove that the environment is unhealthy or unsafe. *In re Burchfield,* 51 Ohio App.3d 148, 156 (4th Dist.1988).; *C.W.*, supra, ¶ 31. It is also relevant that Mother attempted to take A.W. from school to remove her from the kinship placement and would not sign a safety plan. As such, there is competent, credible evidence to support A.W.'s dependency determination.

### *N.T. – abused and neglected*

{¶27} As set forth above, a child may be determined to be abused when the child is endangered, and the parent creates a substantial risk to that child's safety by violating a duty of care, protection, or support. R.C. 2151.031(C). Here, the record is clear. Mother created a substantial risk of harm to N.T. due to poor judgment and impaired driving. Mother caused two separate accidents within 16 minutes of each other, and it is highly probable that N.T. was in the car at the time of both accidents. The fact that N.T. received only minor scrapes

and cuts is inconsequential. Mother argues there was no evidence presented as to the length of time the effects of alcohol and/or Xanax last, and no testimony regarding when exactly Mother had allegedly consumed alcohol that day. Mother was not given field sobriety tests, chemical tests, or any other tests that objectively determined that she was too impaired to legally operate a motor vehicle. Mother's arguments miss the mark.

{¶28} Trooper Mellinger testified that given his experience and training, Mother was driving while impaired at the time of the second accident and more than likely, at the time of the first accident only minutes before. He testified regarding his (1) observations of the scene of the second accident, including the fact that Mother's van door flew off the car; (2) his observations and impressions of Mother herself at the scene as well as his observations and impressions of N.T.; (3) his discussions with Mother at the scene and at the hospital regarding Mother's alcohol and Xanax use, and Mother's resulting criminal charges. Again, without considering the alleged hearsay statements, Trooper Mellinger's testimony is competent, credible evidence to support the trial court's determination that N.T. was abused.

{¶29} Similarly, neglect requires that a child lack adequate parental care because of the faults or habits of the parent. Again, the concerns regarding Mother's use of alcohol and Xanax during the day and before driving, as shown above, and that N.T. was present for at least one and most likely two accidents in a 16-minute span support the determination of neglect. N.T. was extremely fortunate that he did not suffer any major injuries. Other factors that support neglect of N.T. include Mother's total lack of memory of the first accident, her appearance and demeanor at the scene of the second accident and at the hospital, her admission of Xanax use before driving with N.T., her admission of wine consumption before driving with N.T., and the half empty bottle of vodka in her back seat. Without question,

there is competent, credible evidence to support the trial court's determination. Appellant's first assignment of error is overruled.

*Ineffective Assistance of Counsel*

{¶30} In the second assignment of error, Mother argues that her counsel was ineffective in failing to object to alleged hearsay testimony. While this Court recognizes "ineffective assistance" claims in permanent custody appeals, it has declined to address said claims in juvenile dependency type actions. *In re A.C.,* 2018-Ohio-2687, ¶ 29 (5th Dist.) (noting that this court has *not* expanded the doctrine of ineffective assistance of counsel beyond criminal cases and those involving permanent custody), citing *In re Logwood*, 2005-Ohio-3639, ¶ 26 (5th Dist.) and *In re W.A.,* 2013-Ohio-3444, ¶¶ 31-32 (5th Dist.) ("This Court has recognized "ineffective assistance" claims in permanent custody appeals. * * * However, we have not expanded the doctrine of ineffective assistance of counsel beyond criminal cases and those involving permanent custody." Because the case did not result in an order of permanent custody, the court declined to address the ineffective assistance assignment of error on appeal); *In re Utt Children*, 2003-Ohio-4576 (5th Dist.) (recognizing ineffective assistance of counsel in permanent custody cases; the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody*); but see J.Q.,* ¶ 13 (the Twelfth District analyzed an ineffective assistance claim in dependency action). Assuming, without deciding, that such claims apply, Mother's claim is without merit.

{¶31} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to

appellant. *Strickland v. Washington*, 466 U.S. 668 (1984) and *Mansfield v. Studer*, 2012-Ohio-4840 (5th Dist.). The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Id*. at ¶¶ 48-51. To warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and the prejudice prongs. *Id*.

{¶32} To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, at 688. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant in the Sixth Amendment. *Id.* at 687. Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the case, viewed as of the time of counsel's conduct. *Id*. at 689.

{¶33} Due to "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, at 689. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. Strategic or tactical decisions will not form a basis for an ineffective assistance of counsel claim. *Id.* at 689; *State v. Clayton*, 62 Ohio St.2d 45, 48-49 (1980); *State v. Mason*, 82 Ohio St.3d 144, 157-58 (1998) (stating that an appellate court may not second guess a trial counsel's strategy decisions).

{¶34} The second prong requires a defendant to demonstrate in fact that counsel's actions prejudiced the defendant. In other words, there must be a reasonable probability that *but for* counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, at 691-696; *Studer*, ¶ 61; *Baby Girl O*, at ¶ 13.

{¶35} On appeal, Mother argues her counsel was ineffective for failing to object to "multiple instances" of hearsay testimony. We disagree. The decision regarding whether to object to certain evidentiary items or pursue a course of inquiry is a strategic decision undertaken by trial counsel after evaluating the specifics of each case. *Strickland*, at 689. The mere fact that counsel did not object to certain testimony or pursue certain lines of inquiry does not mean the representation fell below the objective standard of reasonable representation. There are multiple reasons why counsel would not object to a state trooper's testimony regarding statements made to him at the scene of a significant car accident.

{¶36} Moreover, there is simply no reasonable probability that the outcome of these proceedings would have been different had Mother's trial counsel objected. Indeed, the record contains substantial evidence to support the trial court's findings of fact and conclusions of law. Thus, Mother cannot demonstrate actual prejudice, as is required to prevail on an ineffective assistance of counsel claim. Appellant's second assignment of error is overruled.

## CONCLUSION

{¶37}   Mother's first and second assignments of error are overruled.  The judgment of the Muskingum County Court of Common Pleas, Juvenile Division, is affirmed in its entirety.

{¶38}   Costs to Appellant.

By: Montgomery, J.

King, P.J. and

Popham, J. concur.